IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| AUTO-OWNERS INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 5:12-cv-2717-TMP |
| | ) |
| RANDY B. TERRY, INC.; RANDY B. TERRY, | ) |
| | ) |
| Defendants. | ) |

REPORT AND RECOMMENDATION

This cause is before the court on the plaintiff's Motion for Partial Default Judgment (Doc. 11) filed September 9, 2013. The court set the motion for a hearing and required notice of the hearing be served on the defendants at three different address (Doc. 13). Notice mailed to one of the addresses was returned, but the other two were not. (Docket Entry 14). Nevertheless, neither defendant, nor any attorney representing them, appeared at the hearing on October 23, 2013. Consequently, the court finds that the plaintiff is entitled to certain interlocutory injunctive relief, pending further determination of any monetary liability defendants may have to plaintiff.

I.  Background

Plaintiff filed its complaint against the two named defendants on August 16, 2012, alleging that plaintiff ("Auto-Owners") issued certain payment and performance bonds on behalf of defendant Randy B. Terry, Inc. ("RBTI"), to secure performance and payment by RBTI under a contract with the Lawrence County Commission. The Lawrence County Commission contracted with RBTI for RBTI to perform certain sewer work on a construction project, and as a

condition of the contract, the Lawrence County Commission required RBTI to post payment and performance bonds.  These bonds were obtained from Auto-Owners.  (Performance and Payment Bonds Doc. 1-1).  To induce Auto-Owners to issue the bonds defendant Randy B. Terry, both individually and as president of RBTI, and his wife, Brenda Terry (individually and as vice president of RBTI), executed an Indemnity Agreement, agreeing to "immediately exonerate and hold harmless, indemnify and reimburse Auto-Owners from any and all claims, demands and liability for losses, costs, and expenses of any kind or nature, including without limitation court costs, attorneys' fees, investigative costs which Auto-Owners may sustain or incur in connection with any one or more" of five potential causes of loss to Auto-Owners, including losses or payments under the payment and performance bonds.  (Indemnity Agreement, Doc. 1-2).

RBTI failed to complete the construction work under its contract with the Lawrence County Commission, and the Commission called on Auto-Owners, as the surety on the bonds, to complete the work and make any necessary payments associated with it.  Although the actual work now has been completed, Auto-Owners still is in the process of auditing its expenses associated with its performance of the bonds and cannot currently state the exact amount it has been required to pay to complete the construction work.  As an interlocutory matter, Auto-Owners seeks relief in the nature of preliminary equitable relief:

    1.  To resolve the issue of liability for both contractual and common law indemnification, with damages to be determined later by the Court (Counts I and II),

    2.  Prohibiting the Defendants from selling, transferring, liening, securing, or otherwise disposing of their assets, or taking any other action to dissipate their assets in order to prevent their assets from being used to discharge their obligations to exonerate and indemnify Auto-Owners under the Indemnity Agreement (Count VI),

    3.  For specific performance to promptly allow Auto-Owners access to defendants' books and records at a mutually convenient date and time within 30 days of the date of entry of this Order (Count IV) ,

4.  For *quia timet* relief (Count V) and specific performance of the collateral security provision relief (Count III), and

5.  For an exoneration order to protect Auto-Owners from anticipated future losses and that the Defendants be directed to post collateral with Auto-Owners in an amount to be determined later by the Court (Count VII).

The defendants were served with process on March 3, 2013, and to date, neither has appeared, answered or otherwise defended against the complaint. Plaintiff moved for entry of default on May 20, 2013, which was entered by the Clerk in July 30, 2013.

II.  Legal Standards for Default Judgment

Once a party has defaulted, all well-pleaded factual allegations of the complaint are deemed admitted and proven.  The Eleventh Circuit as stated the law of default as follows:

> The entry of a default against a defendant, unless set aside pursuant to Rule 55(c), severely limits the defendant's ability to defend the action.  While "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover," a defaulted defendant is deemed to "admit[ ] the plaintiff's well-pleaded allegations of fact."  *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).  The defendant, however, "is not held to admit facts that are not well-pleaded or to admit conclusions of law."  *Id.*  Thus, before entering a default *judgment* for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought.  At that point, the defendant, even though in default, is still entitled to contest the sufficiency of the complaint and its allegations to support the judgment being sought.  *See Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (citing *Nishimatsu*, 515 F.2d at 1206).

*Tyco Fire & Security, LLC v. Alcocer*, 218 Fed. Appx. 860, 863 (11th Cir. 2007) (Italics in original and internal footnotes omitted); *see also Eagle Hospital Physicians, LLC v. SRG*

*Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) ("A 'defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.'")(quoting *Nishimatsu Construction Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *E Beats Music v. Andrews*, 433 F.Supp.2d 1322 (M.D.Ga. 2006).  Under this law, the court is required to examine the factual allegations of the complaint, deeming them to be admitted, and the evidence offered in support of the complaint to determine whether there is a sufficient substantive basis for finding the defaulting defendant liable as alleged by plaintiff and for awarding the particular relief sought by the plaintiff.

III.  <u>Discussion</u>

The admitted factual allegations of the complaint establish that Auto-Owners issued performance and payment bonds on the work of RBTI being performed for the Lawrence County Commission.  Part of the consideration given to Auto-Owners for issuance of the bonds was an indemnity agreement by which RBTI and Randy B. Terry (and his now-deceased wife, Brenda) agreed to indemnify Auto-Owners as follows:

> 1.  INDEMNITY AND HOLD HARMLESS. The Indemnitors shall immediately exonerate and hold harmless, indemnify and reimburse Auto-Owners from any and all claims, demands and liability for losses, costs, and expenses of any kind or nature, including without limitation, court costs, attorney's fees, investigative costs which Auto-Owners may sustain or incur in connection with any one or more of the following:
>
> > (A)  By reason of having executed or procured the execution of Bonds;
> > (B)  By reason of the failure of the Indemnitors to perform or comply with any of the covenants or conditions of this Agreement;
> > (C)  In enforcing any of the covenants or conditions of this Agreement;
> > (D)   In making any investigation, obtaining or attempting to obtain a release, or recovering or attempting to recover loss or unpaid premium in connection with any Bond;

     (E)   In prosecuting or defending any action or claim in connection with any Bond, whether Auto-Owner at its sole option elects to employ its own counsel, or permits or requires the Indemnitors to make arrangements for Auto-Owners' legal representation.

By its express terms, the Indemnity Agreement also provided Auto-Owners with other remedies against RBTI and the Terrys, including requiring them to immediately deposit any sum of money Auto-Owners deemed itself exposed to under the bonds.  The Agreement also gave Auto-Owners a collateral security interest in the assets of the Indemnitors, including all contract rights; "all of the rights, title and interest of the Indemnitors in and to all machinery, equipment, vehicles, tools inventory and materials" utilized in connection with the contract with Lawrence County; and all accounts receivable, choses in action, general intangibles, and insurance proceeds of the Indemnitors.   Furthermore, paragraph 10 of the Indemnity Agreement provided:

     10.    BOOKS AND RECORDS.  At any time, and until such time as the liability of Auto-Owners under all Bonds is terminated or Auto-Owners is fully reimbursed all amounts due to it under this Agreement, Auto-Owners shall have the right of access to the books, records, accounts, and documents of the Indemnitors, wherever located, for the purpose of inspection, copying, or reproduction. … Upon the occurrence of an Event of Default (as defined below), the Indemnitors, upon Auto-Owners' request, shall immediately turn over to Auto-Owner, or its designee, at a place and in a manner designated by Auto-Owners such books, records, accounts, documents and contracts in whatever form, as requested by Auto-Owners:

Paragraph 15 of the Indemnity Agreement defines the term "Events of Default" as including any declaration of default by the oblige of the Bonds (in this case, Lawrence County) or any failure to perform under the contract with the obligee; a failure of RBTI to pay any claims or bills arising from the contract work; and any failure to perform the terms of the Indemnity Agreement itself.  Remedies for breaches of the Indemnity Agreement, set out in paragraph 16 of

the Agreement, include the right of Auto-Owners immediately to take possession of the work being secured by the Bonds, to sell all assets in which Auto-Owners obtained a collateral security agreement as a secured creditor under the Agreement , and to seek any other remedies provided by law.

RBTI defaulted under the contract with Lawrence County, and the County called on Auto-Owners under the payment and performance bonds to complete the work and make all necessary payments under the construction contract.  Auto-Owners then contract with another construction company to complete the work, which now is done.  Auto-Owners also made several payments to sub-contractors of RBTI, who were owed for work performed under the contract.  To date, Auto-Owners has paid out at least $263,000 to complete the work and pay sub-contractors, but it is still auditing its expenditures and cannot presently state the final sum of money it has paid under the bonds and for which it seeks indemnity from RBTI and Randy Terry personally.

Although it is true that Auto-Owners is not presently capable of proving the exact sum of money it has paid out under the bonds and, therefore, is not yet entitled to a final judgment by default, it clearly is entitled to preliminary relief under the express provisions of the Indemnity Agreement.  Because the defendants are in default and Auto-Owners has shown its entitlement to the various forms of relief sought, the entry of this preliminary relief is virtually a final judgment as to equitable relief Auto-Owners requests.  Defendants have not contested Auto-Owners' contractual and equitable right to the relief.  Essentially, Auto-Owners is seeking uncontested preliminary equitable and injunctive relief, including an injunction compelling RBTI and Terry to grant it access to RBTI's books and business accounts, preventing RBTI and Terry from disposing of or dissipating any assets in which Auto-Owners claims a collateral security interest,

and compelling the defendants to deposit with the Clerk of the Court $263,000 under the security deposit provision of the Agreement (paragraph 1). There is no dispute that the express terms of the Indemnity Agreement provides Auto-Owners with each of these remedies, arising from its right both to contractual and common-law indemnification for the expenses it incurred on behalf of RBTI under the bonds. Because the defendants have not contested Auto-Owners' request for preliminary relief, the court agrees that it is entitled to such preliminary equitable relief as will require the defendants (1) to deposit security with the Clerk in the amount of $263,000, (2) grant Auto-Owners access to RBTI's books, records, and accounts, and (3) not to sell, lien, encumber or otherwise dissipate the value of RBTI's or Terry's equipment, inventory, accounts, intangibles, and proceeds contrary to Auto-Owners rights as a secured creditor under the Indemnity Agreement.

A. *Quia Timet* and Exoneration

Alabama law recognizes the right of a surety on a debt his principal owes to a creditor to seek to compel the principal to pay the debt owed and exonerate the surety from liability to the creditor. This right has long been enforced by the equitable bill *quia timet*. As the Alabama Supreme Court has explained:

> "No principle is more familiar, or more firmly established, than that a surety, after the debt for which he is liable has become due, without paying or being called on to pay it, may file a bill in equity in the nature of a bill *quia timet* to compel the principal debtor to exonerate him from liability by its payment, *provided no rights of the creditor are prejudiced thereby*. And in order to maintain such bill it is not necessary for the surety to show any fraudulent disposition of property on the part of the principal or any special reason for fearing a loss. When a surety comes into a court of equity to compel the principal to pay the debt, *he stands in the position of an equitable assignee and may use the remedies of the creditor at his own risk and cost.*" (Italics supplied.) 21 R. C. L. p. 1110, § 146; Tillis et al. v. Folmar, 145 Ala. 176, 39 So. 913, 117 Am. St. Rep. 31, 8 Ann. Cas. 78; Segall et al. v. Loeb et al., 218 Ala. 433, 118 So. 633.

Alabama Bank & Trust Co. v. Garner, 225 Ala. 269, 271, 142 So. 568, 570 (1932) (Italics in

original).  Further, this equitable bill extends not only to cash debts, but also personal property:

> "Where there is a future right of enjoyment of personal property, courts of equity
> will interpose and grant relief upon a bill *quia timet*, where there is any danger of
> loss or deterioration, or injury to it, in the hands of the party who is entitled to the
> present possession." 2 Story's Eq. § 845; Bethea v. Bethea, 116 Ala. 265, 22
> South. 561.

Peters v. Rhodes, 157 Ala. 25, 29, 47 So. 183, 184 (1908).  The purpose of the bill is to secure to

the surety of a principal's debt either exoneration of the obligation to pay the debt (by requiring

the principal to pay it) or reimbursement from the principal for the surety's payment of the debt.

It secures the surety by allowing it to take possession of money or property in the hands of the

principal to which it is entitled as indemnity for the debt it has paid for the principal, in order to

prevent dissipation of the value of the money or property.

In this case, Auto-Owners seeks exoneration and indemnification of the debt it has paid

for RBTI on the contract with Lawrence County in the amount of $263,000 and such other

amounts as it may determine from its audit.  The Indemnity Agreement expressly allows Auto-

Owners to demand that the Indemnitors (RBTI and Randy Terry) make a deposit in such sums as

Auto-Owners may determine it is exposed to pay as the surety on the bonds.  In this case, the

remedy is specific performance enforcing a contract provision requiring the deposit of funds to

secure the right of indemnification.  Because RBTI and Terry have not contested Auto-Owners'

entitlement to this relief, the court should enter an Order requiring the defendants to deposit

$263,000 with the Clerk of Court as security against the sums to which Auto-Owners is entitled

for indemnification.

Case law nationwide has recognized the right of a surety to use the equitable remedy of specific enforcement to secure collateralization of its right to indemnification of the principal's debt.  One court has explained under Florida law comparable to Alabama law:

> However, in Transamerica Premium Ins. Co. v. Cavalry Constr., Inc., 552 So.2d 225 (Fla. 5th DCA 1989), the Florida Fifth District Court of Appeal generally recognized, without a discussion, that collateral security clauses may be enforced through equity. Id. at 226–27 ("While we agree that such [collateral security] clauses are enforceable in equity, the party seeking *quia timet* relief must clearly establish a basis for it.").  In addition, case law nationwide has affirmed the availability of this relief in a manner consistent with the general principle of Florida law in this area stated by the Florida Fifth District Court of Appeal. See, e.g., Auto–Owners Ins. Co., No. 05–334–Orl–31, 2007 WL 676217; Safeco Ins. Co. of Am. v. Schwab, 739 F.2d 431 (9th Cir. 1984) ("[S]ureties are ordinarily entitled to specific performance of collateral security clauses.  If a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced"); Milwaukie Constr. Co. v. Glens Falls Ins. Co., 367 F.2d 964 (9th Cir. 1966), citing 72 C.J.S., Principal and Surety § 303 (1951)(legal remedy of money damages was not adequate and specific performance was available to require indemnitors to deposit with surety money or acceptable security equal to its established reserves); Feibus, 15 F.Supp.2d 579 (surety was entitled to specific performance in order to protect the surety's bargained-for rights to collateral security); United Bonding Ins. Co. v. Stein, 273 F.Supp. 929 (E.D.Pa. 1967) (legal remedy for subsequent damages will not suffice when indemnitor refuses to voluntarily comply with surety's demands); U.S. Fid. & Guar. Co. v. Stanley Contracting, Inc., 303 F.Supp.2d 1169 (D.Or. 2004) (court granted specific enforcement term requiring indemnitors to post security in order to protect the surety from future losses); BIB Construction, Inc. v. Fireman's Ins. Co. of Newark, NJ, 214 A.D.2d 521, 625 N.Y.S.2d 550 (N.Y. 1 App. Div. 1995) ("[D]amage resulting from failure to give security is not ascertainable, and the legal remedy is therefore inadequate").  The Restatement (Third) of Suretyship and Guaranty, § 21 cmts. i, j, k, also recognizes this right.

Liberty Mutual Ins. Co. v. Aventura Engineering & Const. Corp., 534 F. Supp. 2d 1290, 1320-21 (S.D. Fla. 2008).

The court notes that this case is fundamentally different from those cases in which a party seeking only a money judgment asks the court to freeze or attach the assets of the defendant to better enable the plaintiff to collect his judgment in the future.  The Eleventh Circuit has made

plain that a preliminary injunction is not proper to freeze assets when the claim is simply one for money damages.  "[A] district court lacks the authority to issue a preliminary injunction freezing the assets of a defendant in a case seeking only money damages."  Noventa Ocho LLC v. PBD Properties LLC, 284 F. App'x 726, 728 (11th Cir. 2008) citing and quoting Rosen v. Cascade Int'l, Inc., 21 F.3d 1520, 1531 (11th Cir.1994).  Unlike the plaintiff in Noventa Ocho, Auto-Owners seeks equitable relief as well as damages, arising from its contractual right to indemnification.  Although there appears to be no specific and identifiable fund Auto-Owners seeks, it is seeking enforcement of an express contractual duty on the part of the defendants to deposit money whenever an event of default occurs.  "[A] preliminary injunction is warranted to enforce a surety's rights if the principal is insolvent or secreting assets."  Liberty Mutual Ins. Co. v. Aventura Engineering & Const. Corp., 534 F. Supp. 2d 1290, 1322 (S.D. Fla. 2008) citing Glades County v. Detroit Fidelity & Surety Co., 57 F.2d 449, 452 (5th Cir.1932).  This is not an instance where the plaintiff has an unsecured cause of action for a money judgment that he wishes to secure by freezing or attaching the defendant's assets.  Rather, this case involves a clear equitable right of *quia timet* to require deposits of funds by the defendants as security indemnification owed to plaintiff.  The legal remedy of a money judgment is not adequate to enforce the surety's negotiated right to collateralization of its indemnification; specific performance is required.

Likewise, the court should enter an order in the nature of a preliminary injunction to require defendants to allow Auto-Owners access to RBTI's books, records, and accounts for auditing purposes.  Again, the Indemnity Agreement expressly provides Auto-Owners with the right to have access to the books and records for purposes of auditing and locating assets from

which to seek reimbursement of sums paid on behalf of the defendants.  Such a right seeks enforcement by specific performance of the contractual duty to allow access.

Finally, the court should preliminarily enjoin RBTI and Terry from selling, liening, encumbering, or otherwise dissipating the value of equipment, inventory, and other assets used with respect to or arising from the Lawrence County contract.  Auto-Owners has a collateral security interest in all such assets that it is entitled to enforce to secure reimbursement of the sums it paid for RBTI under the bonds.  Again, this is not a case where an unsecured creditor seeks to freeze the assets of the defendants, but rather where a *secured* creditor seeks an injunction to enforce its equitable rights in the secured collateral.  See Clark Equipment Co. v. Armstrong Equipment Co., 431 F.2d 54, 57 (5th Cir. 1970) ("The injunctive relief granted [requiring defendant to assemble and deliver secured collateral] was not only within the court's jurisdiction but was, we think, the only appropriate remedy for the enforcement of the terms of the agreement ….") citing Stern v. South Charter Tube Co., 390 U.S. 606, 88 S. Ct. 1332, 20 L. Ed. 2d 177 (1968).


CONCLUSION AND RECOMMENDATION

Based on the allegations of the complaint, which are admitted by defendants due to their default, the plaintiff is entitle to certain preliminary equitable relief by default.  A final money judgment can be entered only once the audit by Auto-Owners is completed.  Pending the completion of the audit, the magistrate judge RECOMMENDS that the court enter a default preliminary injunction to (1) require the defendants to deposit with the Clerk of Court forthwith the sum of $263,000 as a security deposit against the sums to which Auto-Owners will be entitled for indemnification; (2) require defendants to immediately allow plaintiff access to and

make available all records, accounts, and documents relevant to defendants' business and the contract with the Lawrence County Commission; and (3) prohibiting the defendants from selling, leasing, liening, encumbering, damaging, destroying, or otherwise dissipating or disposing of the defendants' equipment, inventory, accounts, intangibles, and other assets pending entry of a final judgment in this action.

The magistrate judge further RECOMMENDS that the action be again referred to the magistrate judge for calculation of a final default judgment once Auto-Owners submits evidence of the amount claimed after its completes its audit.

## NOTICE OF RIGHT TO OBJECT

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court. **Any objections to the failure of the magistrate judge to address any contention raised in the matter also must be included.** Failure to do so will bar any later challenge or review of the factual findings **or legal conclusions** of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S. Ct. 899, 88 L.Ed.2d 933 (1986); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982) (*en banc*). In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed

findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record. The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a district judge.

The Clerk is DIRECTED to mail a copy of the foregoing to the defendants.

DONE this 6th day of November, 2013.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE